UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

APR 1 2 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-321-GWU

WILLIAM SMITH,                                                PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Case: 6:05-cv-00321-GWU Doc #: 15 Filed: 04/12/06 Page: 5 of 14 - Page ID#: 95

Smith

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, William Smith, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back and borderline intellectual functioning. (Tr. 15). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Smith retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 17-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 39, work history in coal mining, and eighth-grade educational background but "keeping in mind his testimony that he has some difficulty with reading and writing," could perform any jobs if he were capable of light level exertion, and also had the following non-exertional impairments. (Tr. 253). He: (1) could only occasionally climb, stoop, or crawl; (2) needed to avoid vibrations or situations where

7

balancing was required, such as heights; (3) had a "seriously limited but not precluded" ability to understand, remember, and carry out detailed instructions, to deal with work stresses, and to maintain attention and concentration; and (4) had no ability to handle complex job instructions. (Tr. 253-5). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Smith filed an application for DIB alleging disability as of December 18, 2001[1] due to a coal mining accident in which he had broken a vertebra, broken some ribs, and injured his right leg. (Tr. 72). However, at the administrative hearing, he testified that the ribs had healed and did not bother him. (Tr. 244). His back continued to be extremely painful. He had been in physical therapy but could not complete it, and currently lived with his parents, performed no household chores, and engaged in no particular activities. (Tr. 245-6, 249). He still had low back pain radiating down his right leg, which also went numb. (Id.). His back pain was constant, but it became much worse three or four times a week, and forced him to

---

[1]Mr. Smith indicated that he did not stop work on "light duty" until September, 2002. (Tr. 72).

8

lie on the floor. (Tr. 244, 247). His only current treatment was pain medication. Mr. Smith also testified to a history of depression even before his accident, and stated that he had been on Paxil, but could not afford the medication and was receiving no treatment. (Tr. 248).

Medical records in the transcript include a two-day hospitalization after the mining accident in December, 2001. A CT scan of the lumbar spine confirmed the presence of a fractured fourth lumbar vertebra with "minimal" loss of height. (Tr. 121, 125). The treating physician, Dr. Yasser Nadim, noted that Mr. Smith was neurovascularly intact during the entire hospital admission, and he was discharged with a back brace with no activity restrictions specified. (Tr. 121).

As the ALJ noted, there is no evidence of follow-up in the transcript, until the plaintiff was consultatively examined by Dr. David Muffly, an orthopedic surgeon, on October 31, 2002. Dr. Muffly indicated that the plaintiff had used the back brace for three months, attended physical therapy, had been treated by a Dr. Bean, and had recently undergone a functional capacity evaluation. (Tr. 127).[2] Dr. Muffly further indicated that the plaintiff had returned to work outside the coal mine doing light-duty work, such as answering the phone. (Id.). On examination, Dr. Muffly found that Mr. Smith presented himself without a brace or cane, and walked without a limp. (Id.). Reflexes were equal, strength was normal, there was no atrophy, and straight leg

___

[2]None of this evidence referred to by the doctor is independently in the transcript.

9

raising was negative. (Id.). The lumbar spine had tenderness and spasms, but the plaintiff could bend forward 75 degrees, also with somewhat restricted extension and lateral bending. (Tr. 128). New X-rays showed a healed 20 percent compression fracture of L4. (Id.). Dr. Muffly also reviewed the CT scan from December, 2001, as well as an x-ray of the chest. (Id.). His assessment was of a healed lumbar compression fracture and a healed left 5th rib fracture. (Id.). He assigned an 8 percent impairment under the AMA guidelines, and stated that he would agree with the findings on the functional capacity evaluation of lifting no more than 30 pounds. (Id.). He recommended that the plaintiff continue with a "light duty job." (Id.).

State agency physicians who reviewed the record in June and September, 2003 concluded that the plaintiff could perform "light" level work with non-exertional restrictions consistent with the hypothetical question. (Tr. 171-86).

There is little subsequent evidence of any other treatment for the plaintiff's back, apart from an emergency room visit in December, 2002 when he left without being seen (Tr. 148-9), until Mr. Smith sought treatment from Dr. Caesar Agtarap, a specialist in pain management, in March, 2004. (Tr. 207). The plaintiff indicated that he had tried going back to work but could not last, and Dr. Nadim had given him "permanent disability." (Id.). He had not been taking any medications for three months. Dr. Agtarap referred to an MRI from August 11, 2003 showing anterior wedging of L4, an old compression fracture, and degenerative disc disease with a

10

small central bulge at L4-S1. (Id.). His examination showed that the plaintiff had an antalgic gait. There was tenderness in the back, mostly in the right paralumbar area, and some sacroiliac joint tenderness, mainly on the right side, and forward flexion was listed as being "less than" 90 degrees. (Tr. 208). Straight leg raising was positive at approximately 60 degrees and there were also indications of sciatica and a positive Patrick's test. (Tr. 209). Reflexes were equal. Dr. Agtarap prescribed Lortab and Naprosyn, and indicated that he would not prescribe anything for muscle spasms. (Id.). In terms of functional restrictions, his only statement was that the plaintiff should not operate "heavy machinery." (Tr. 210). Records of three follow-up visits seem to indicate a gradual improvement in the plaintiff's condition, and the most recent note, dated July 29, 2004 indicated that Mr. Smith now rated his pain at about 3 on a scale of 1 to 10, down from 10/10 on the same scale at his first visit. (Tr. 198, 207). Physical findings appear to be the same in terms of range of motion and tenderness. (Tr. 199). On this occasion, Dr. Agtarap gave Mr. Smith "physical exercise instructions," and advised him not to drive or operate heavy machinery while taking pain medications. (Tr. 200).

On October 21, 2004, Dr. Agtarap completed a physical residual functional capacity assessment limiting Mr. Smith to less than 10 pounds lifting on occasional basis and less than full-time sitting and standing, never any climbing, stooping, crouching, kneeling, or crawling, occasional balancing, having restrictions on

11

reaching, pushing, pulling, and restrictions on working around moving machinery, temperature extremes, chemicals, dust, fumes, humidity, and vibration. (Tr. 212-14). The reason given for all the limitations was anterior wedging of L4, a compression fracture, degenerative disc disease, and a small central disc bulge, or, in other words, the results of the MRI from 2003. Dr. Agtarap also commented that the patient had severe back pain and should not be pushing or pulling. (Tr. 213). He did not really explain why these problems would restrict the plaintiff's ability to work around chemicals, dust, fumes, and humidity.

The ALJ rejected Dr. Agtarap's restrictions, stating that they were not "cross-referenced" with any kind of diagnostic studies and that his "treatment modalities appear to be based predominantly on subjective complaints." (Tr. 16). On appeal, the plaintiff challenges the ALJ's rejection of the treating physician's opinion.

Clearly, Dr. Agtarap did have access to at least one objective study, the 2003 MRI, that was not available to other sources. However, the findings listed essentially confirmed what was already known, that the plaintiff had a fractured L4 vertebra, and some additional degenerative disc disease. Dr. Agtarap's physical findings were not dramatically different from Dr. Muffly's, with no neurological deficits and some non-specific limits in spinal range of motion. It is also difficult to reconcile extreme limitations due to back pain with Mr. Smith's reported improvement in pain between his first and fourth office visits, and there appears to be no basis for any of the

12

physician's restrictions on working around chemicals, dust, fumes and humidity. Finally, there is the additional, most significant, factor that the plaintiff stated that he was able to lift 30 pounds in his Disability Report, dated March 13, 2003. (Tr. 72). The opinion of a treating source does not have to be given controlling weight when it is not supported by objective medical evidence and it is contradicted by the plaintiff's own evidence. Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004). Under the circumstances of this case, the ALJ had a reasonable basis to reject the opinion of Dr. Agtarap.

The plaintiff also raises an issue regarding educational level. Mr. Smith testified that he completed the eighth grade in regular classes, although he apparently failed seventh grade. (Tr. 78,101, 242). He stated that he was not a good reader, however, and could not understand "parts" of the newspaper. (Tr. 246). A psychological evaluation by Reba Moore in May, 2004 included achievement testing which showed a third grade reading ability and a fifth grade arithmetic ability. (Tr. 193). Another psychological evaluation by Christopher Catt in December, 2004 showed a fourth grade reading ability. (Tr. 219). The plaintiff argues that the ALJ's hypothetical which included a reference to the fact that the plaintiff had "some difficulty" with reading and writing was at variance with Commissioner's regulations. However, the plaintiff's own testimony was that he could read part of a newspaper, and the plaintiff has submitted no evidence that the

13

Smith

jobs described by the VE, such as office cleaner, laundry worker, hand packager, hand assembler, small products inspector and production worker would require a greater degree of literacy. Even if an ideal hypothetical question would have contained more specific limitations, the error was harmless. <u>See</u> <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541,547 (6th Cir. 2004).

The plaintiff's final argument, that his IQ scores in the 70s (Tr. 192, 218) reflect such a low "general learning ability" under the DOT that he would not be able to perform the jobs described by the VE, is unpersuasive for a variety of reasons, particularly given that the VE did not specify that her opinion was based on the DOT. For this and other reasons listed in the defendant's brief at pp.9-11, this argument is without merit.

The decision will be affirmed.

This the ___/2___ day of April, 2006.

G. WIX UNTHANK
SENIOR JUDGE

14